IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT COURT OF OKLAHOMA

| | |
|---|---|
| 1) CRYSTAL COMPHER,<br>Individually and as Parent and Next Friend of<br>2) A.C., Minor Child,<br>3) KAYLEE THURLO,<br>Individually and as Personal Representative of the Estate of<br>4) W.L., Deceased Minor Child<br><br>                    Plaintiffs,<br><br>v.<br><br>1) BRITTNEY BURNETT, in her Individual Capacity and Official Capacity as Deputy Sheriff of Mayes County, Oklahoma;<br>2) MIKE REED, in his Individual Capacity and Official Capacity as Sheriff of Mayes County, Oklahoma; and,<br>3) THE BOARD OF COUNTY COMMISSIONERS OF MAYES COUNTY, STATE OF OKLAHOMA<br><br>                    Defendants. | Case No. _____<br><br>*Attorney's Lien Claimed*<br>*Jury Trial Demanded* |

## COMPLAINT

COME NOW the Plaintiffs, 1) Crystal Compher, individually and as parent and next friend of 2) A.C., minor child; 3) Kaylee Thurlo, individually and as Personal Representative of the 4) Estate of W.L., deceased minor child, with their causes of action against the Defendants, 1) Brittney Burnett, in her individual capacity and official capacity as Deputy Sheriff of Mayes County, Oklahoma; 2) Mike Reed, in his individual capacity and official capacity as Sheriff of Mayes County, Oklahoma; and 3) The Board of County Commissioners of Mayes County, State of Oklahoma, allege the following:

## PARTIES

1. Plaintiff Crystal Compher is a resident of Mayes County, Oklahoma.

2. Plaintiff A.C., minor child, is a resident of Mayes County, Oklahoma.

3. Plaintiff Kaylee Thurlo is a resident of Mayes County, Oklahoma.

4. Plaintiff W.L., deceased minor child, was a resident of Mayes County, Oklahoma at the time of his death.

5. Plaintiff Kaylee Thurlo has been appointed Personal Representative of the Estate of W.L.  *See* Order filed on January 16, 2019 in PB-2018-74; Mayes County District Court, Oklahoma.

6. Upon information and belief, Defendant Brittney Burnett is a resident of Rogers County, Oklahoma.

7. Upon information and belief, Defendant Mike Reed is a resident of Mayes County, Oklahoma.

8. At times relevant to the events described herein, Defendant Brittney Burnett was employed as a Deputy Sheriff of the Mayes County Sheriff's Department and acting within the course and scope of her employment and under color of state law.

9. At times relevant to the events described herein, Defendant Mike Reed was the Sheriff of the Mayes County Sheriff's Department and acting within the course and scope of his employment and under color of state law.

10. Defendant Board of County Commissioners of Mayes County ("BCCMC") is a political subdivision of the State of Oklahoma located in Mayes County, Oklahoma and is responsible for the operation of the Mayes County Sheriff's Department.

**JURISDICTION AND VENUE**

11. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because the claims alleged arise under the Constitution and laws of the United States of America and pursuant to 42 U.S.C. § 1983.

12. This Court has supplemental jurisdiction over the state claims alleged herein pursuant to 28 U.S.C. § 1367(a).

13. This Court has personal jurisdiction over all Defendants because they are either political subdivisions of the State of Oklahoma or citizens of the State of Oklahoma.

14. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b) in that the defendants reside in the Northern District of Oklahoma and a substantial part of the events giving rise to the claims occurred in the Northern District of Oklahoma.

**FACTUAL ALLEGATIONS**

15. On May 10, 2018, at, or around 9:30 p.m., Mayes County dispatch advised Deputy Burnett that someone called about their neighboring home that had been vacant for over a year and they suspected that someone was inside the vacant home with a flashlight.

16. At approximately 9:30 p.m., Deputy Burnett acknowledged the details of the call, including the fact the home was vacant.

17. The information provided to dispatch and known by Deputy Burnett at the time did not evoke an emergent response. Deputy Burnett has admitted that the circumstances of the call did not require an emergent response.

18. In responding to the non-emergency call, Deputy Burnett had time to think, plan, calculate, and deliberate her actions.

19. Despite the non-emergency situation, Deputy Burnett proceeded to the

vacant home in an emergent manner by traveling at excessive rates of speed down a dark road with her lights and sirens activated.

20. While en route to the vacant home at 9:50 p.m., Deputy Burnett was going eastbound on County Road East 410 in Spavinaw, Mayes County, Oklahoma, when she failed to devote her attention to the road, creating a substantial risk of serious harm to Plaintiffs, by looking down at her vehicle's computer screen.

21. At the time she looked away from the road, she was also traveling in excess of the 55 miles per hour speed limit.

22. A certified Accident Reconstructionist with the Oklahoma Highway Patrol reviewed Deputy Burnett's vehicle's Crash Data Retrieval equipment and determined that Deputy Burnett's vehicle "was travelling at a speed of at least 82 miles per hour, 5 seconds prior to the impact, with the driver making an emergency brake application. The speed prior to this cannot be reasonably calculated, and is likely much higher since the driver is already making an emergency brake application." The posted speed limit is 55 miles per hour on this portion of County Road 410.

23. Factors aside from Deputy Burnett's failure to devote time and attention to the road while speeding in response to a non-emergent call that contributed to the collision include:

    a. Deputy Burnett was aware of the dangers of driving on the road where the subject collision occurred, as she stated a preference for driving down a different road when driving in an emergent manner like she did at the time of the subject collision;

    b. Deputy Burnett's decision to travel down the dangerous road was even more

4

egregious because it was nighttime and she was speeding; and,

c. Deputy Burnett's vehicle was repeatedly having mechanical issues prior to, and at the time of, the subject collision: she believed a vehicle sensor was knocked out; and also, her vehicle's brakes had locked up on multiple occasions prior to the subject collision and as recently as one day prior to the May 10, 2018 collision.

24. By driving under any one, greater so under all, of the aforementioned conditions, Deputy Burnett showed a deliberate indifference to the substantial risk of serious harm she could cause to Plaintiffs, which she did cause when she lost control of her vehicle and slid across multiple lanes of traffic, violently colliding into Plaintiff Crystal Compher's vehicle.

25. At the time of the collision, Plainitff Crystal Compher was driving her vehicle northbound on State Highway 82 with Plaintiffs A.C., Kaylee Thurlo, and W.L. as passengers.

26. All Plaintiffs sustained injuries as a result of the collision.

27. Ms. Thurlo was pregnant with W.L. at the time of the collision. Unfortunately, the following day, on May 11, 2018, W.L. was born stillborn as a result of injuries sustained from the collision.

### CAUSES OF ACTION

### Count 1 – 42 U.S.C. §1983 Violation based on Substantive Due Process Against Deputy Burnett

28. Plaintiffs hereby incorporate and re-allege all preceding paragraphs by reference.

29. In *Green v. Post*, 574 F.3d 1294 (2009), the Tenth Circuit codified the

5

clearly established legal authority that a deliberate indifference standard applies in circumstances like those encountered by Deputy Burnett on May 10, 2018, where she had time to deliberate prior to the crash. *See also Browder v. Casaus*, 675 Fed. Appx. 845, 850–51 (10th Cir. 2017).

30. Deputy Burnett's actions were the result of the luxury of having time to make unhurried judgments, upon chance for repeated reflection, largely uncomplicated by the pulls of competing obligations.

31. Deputy Burnett's actions as described herein violated the constitutional rights of Plaintiffs.

32. The law was clearly established by the Tenth Circuit at the time of the events described herein by the legal precedent articulated in *Green v. Post¸* 574 F.3d 1294 (2009).

33. Based on the holding and legal authority reasoned by the Tenth Circuit in *Green v. Post*, it would be clear to Deputy Burnett that her conduct on May 10, 2018, was unlawful under the circumstances.

34. Deputy Burnett knew on May 10, 2018, that her deliberate and indifferent actions as described and pleaded herein created an extreme risk of serious injury to someone in any of the Plaintiffs' positions.

35. Deputy Burnett was aware of a substantial risk of serious harm to someone in any of the Plaintiffs' positions and she had time to actually deliberate before engaging in that risk.

36. The deliberate and calculated actions by Deputy Burnett are of such a nature that they shock the conscience, due to the luxury of time afforded to Deputy Burnett's

6

decision-making process.

**Count 2 – 42 U.S.C. § 1983 Violation based on Substantive Due Process Against The Board of County Commissioners of Mayes County**

37. Plaintiffs hereby incorporate and re-allege all preceding paragraphs by reference.

   *A. Failure to Train*

38. Prior to the subject collision, Defendant BCCMC had policies in place that would have prevented the violation of Plaintiffs' constitutional rights as described herein.

39. However, Defendant BCCMC failed to provide any training on the policies to its deputies that would have prevented deputies, such as Deputy Burnett, from driving under any one, or all, of the dangerous conditions discussed herein.

40. In light of the duties assigned to Deputy Burnett and other similarly situated deputies, the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that Defendant BCCMC can reasonably be said to have been deliberately indifferent to the need.

41. If Defendant BCCMC would have provided the appropriate training to its deputies, the constitutional violation against Plaintiffs would not have occurred.

42. Defendant BCCMC's failures to train, or adequately train, indicates its deliberate indifference to Plaintiffs' constitutional rights because the call to which Deputy Burnett was responding to at the time of the subject collision was routine and predictable.

   *B. Custom of Unsafe Driving*

43. In the alternative, if a formal policy did not exist, it was a widespread practice amongst the Mayes County Sheriff Deputies to drive despite unsafe circumstances like those in which Deputy Burnett drove at the time of the subject collision. Defendant

7

BCCMC was deliberately indifferent to this custom, which led to the deprivation of Plaintiffs' constitutional rights.

44. Indeed, the Mayes County Sheriff Department's custom of unsafe driving practices has continued to date. By way of example, on January 5, 2019, Mayes County Deputy Dustin Evans was driving when he missed a stop sign at an intersection and collided into another vehicle. The driver of the vehicle Deputy Evans hit was ejected from the vehicle and sustained serious injuries. The passenger was also injured.

### C. *Negligent Hiring and Retention*

45. Deputy Burnett had a propensity to violate traffic regulations and drive in an unsafe manner. Defendant BCCMC knew, or should have known, of this propensity at the time it hired Deputy Burnett, which should have prevented Defendant BCCMC's hiring of Deputy Burnett.

46. Moreover, Defendant BCCMC should have discovered this propensity during Deputy Burnett's time of employment, but before the subject collision.

47. If it wasn't for Defendant BCCMC's negligent hiring and retainment of Deputy Burnett, the constitutional deprivations of Plaintiffs complained of herein would not have occurred.

### **Count 3 – 42 U.S.C. §1983 Violation based on Substantive Due Process Against Sheriff Mike Reed**

48. Plaintiffs hereby incorporate and re-allege all preceding paragraphs by reference.

49. At all relevant times, Sherriff Reed supervised Deputy Burnett and other Mayes County Deputies.

50. Sherriff Reed was aware of the custom of Mayes County Deputies

disregarding traffic regulations when it was not appropriate and safe to do so.

51. Sherriff Reed was aware of the custom of Mayes County Deputies driving under any of the other unsafe conditions like those under which Deputy Burnett was driving as described herein.

52. This custom is evidenced by the recent incident discussed in detail above that occurred on January 5, 2019, wherein a Mayes County Deputy failed to stop at a stop sign and caused a collision that injured innocent civilians.

53. At all relevant times, Sherriff Reed was deliberately indifferent to the constitutional rights of public citizens, including Plaintiffs, by acquiescing to unsafe driving practices like Deputy Burnett's.

54. Had Sheriff Reed taken steps to halt the custom of Mayes County Deputy's having unsafe driving practices, Sheriff Reed could have prevented Deputy Burnett's violations of Plaintiffs' substantive due process rights.

**Count 4 – Negligence Against The Board of County Commissioners of Mayes County**

55. Plaintiffs hereby incorporate and re-allege all preceding paragraphs by reference.

56. Plaintiffs served their Notice of Claims pursuant to the Governmental Tort Claims Act, 51 O.S. § 151 *et seq*. ("GTCA") via USPS Certified Mail which was signed for on July 23, 2018, by the appropriate agents and/or representatives for all of the Defendants named in this suit (the "Notice").

57. The Notice provided sufficient and proper notice for each and all of Plaintiffs' claims alleged herein against each and all of the political subdivision and/or government actors named herein for purposes of 51 O.S. § 157.

58. The ninety (90) days for the political subdivision and/or government actors to accept or deny Plaintiffs' GTCA claims expired on October 21, 2018; and thus, the claims are deemed denied by operation of law.

59. Plaintiffs' allegations and pendent GTCA claims are timely because this suit was filed within one-hundred-eighty (180) days of the date of denial.

60. Deputy Burnett's actions described herein on May 10, 2018, were within the course and scope of her employment with the Mayes County Sheriff Department. The Defendant BCCMC was responsible for the operation of the Mayes County Sheriff Department.

61. At the time of the subject collision, Deputy Burnett was acting both negligently and in reckless disregard for the safety of persons traveling on the road, including Plaintiffs, for the reasons discussed herein.

62. As a direct and proximate result of Deputy Burnett's actions as described herein, each and every Plaintiff sustained injuries and the injuries sustained by Ms. Thurlo and her baby, W.L., led to W.L.'s death.

WHEREFORE, each Plaintiff prays for judgment in his/her favor against each Defendant in a sum in excess of $75,000.00 exclusive of costs and interest, together with the awarding of lawful costs, interest, attorney's fees, punitive damages, and other relief this Court deems just and proper.

Respectfully submitted,

/s/ Daniel Aizenman

Daniel Aizenman, OBA #30971
AIZENMAN LAW GROUP
5800 East Skelly Drive, Suite 575
Tulsa, OK 74135
P: 918-426-4878; F: 918-513-6080
dan@aizenmanlaw.com